FILED

2017 Mar-31  PM 04:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **RONALD HUNTER, JR.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | **1:15-cv-02266-KOB** |
| | ] | |
| **LEEDS, CITY OF, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

**<u>MEMORANDUM OPINION</u>**

This case involves Plaintiff's allegations that he was shot without provocation by Leeds city police officers, who then tampered with the evidence of their unlawful actions. This matter is before the court on Defendants' "Motion for Summary Judgment." (Doc. 9). Plaintiff filed a Response. (Doc. 43).[1] The court determined that it did not require a reply. Additionally, Defendants filed their Motion for Summary Judgment before filing a motion to dismiss. Therefore, the court must deal with Plaintiff's untested claims and assume they state a claim. For the reasons stated in this Memorandum Opinion, the court will **GRANT IN PART** and **DENY IN PART** the Motion for Summary Judgment.

I.       **Standard of Review**

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* FED.

---

[1] Plaintiff also filed a Rule 56(d) motion in response to the Motion for Summary Judgment, which the court previously denied because he failed to meet his burden to show "by affidavit or declaration that, for specified reasons," he could not "present facts essential to justify [his] opposition." *See* FED. R. CIV. P. 56(d); (Docs. 28, 40).

R. CIV. P. 56. When a district court reviews a motion for summary judgment, it must determine

two things: whether any genuine issues of material fact exist, and whether the moving party is

entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting FED. R. CIV. P. 56).

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats &*

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In response, the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting

FED. R. CIV. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive

evidentiary burden," to determine whether the non-moving party presented sufficient evidence on

which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The

court must refrain from weighing the evidence and making credibility determinations because

2

these decisions belong to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## II.   Procedural History

The court initially denied Defendants' summary judgment motion as premature. (Doc. 16). Upon motion by the Defendants, the court vacated that order and directed the parties to brief the Motion for Summary Judgment. (Doc. 25). In its initial Order setting a briefing schedule on the Motion for Summary Judgment, the court directed the Plaintiff to file a response by June 10, 2016 and noted that the Order did not preclude Mr. Hunter from filing a Rule 56(d) motion, which he could do no later than May 27, 2016. (*Id.*). Mr. Hunter did not file a response but filed a Rule 56(d) motion that the court has already denied. (Doc. 40).

In ruling on that motion, the court indicated that it would consider Mr. Hunter's statement of facts in his Rule 56(d) motion and the evidentiary submissions attached to that motion in ruling on Defendants' Motion for Summary Judgment. (*Id.*). Between the time Mr. Hunter filed his Rule 56(d) motion and the court's ruling on it, his attorney, Ms. Valerie Hicks Powe, withdrew from representing Mr. Hunter, and the court suspended deadlines for 30 days to give Mr. Hunter time to obtain new counsel. (Doc. 37). Mr. Hunter filed an untimely request for additional time to obtain counsel; the court gave Mr. Hunter three weeks to both acquire counsel and respond to the Motion. (Docs. 39, 40).

Mr. Hunter acquired new counsel and filed a timely response. (Doc. 23). The court concludes that it does not require a reply from Defendants to decide the Motion for Summary Judgment.

## II.    Statement of Facts[2]

On December 16, 2013, following two 911 calls, the Leeds City Police Department dispatched officers Robert Kirk and Brian Chalian, Sergeant Ron Reaves, Investigator Alan Holman, and Police Chief Byron Jackson to Frisco Avenue in Leeds. The officers were dispatched to investigate a report of a male holding a child hostage at gunpoint at apartment 122 of the Marlee Villa Apartments. Dispatch informed the officers, as they were en route to the apartments, that gunfire had been exchanged; that the suspects had left the apartment; and that one of the suspects, Ronald Hunter, was sitting in a yellow Monte Carlo directly in front of apartment 122.

When Officers Kirk, Reaves, and Chalian arrived at the complex, they found Mr. Hunter in the Monte Carlo in front of apartment 122. The officers present at the scene aver that Officer Kirk drew his gun and instructed Mr. Hunter—who remained in the car— to show him his hands numerous times, but Mr. Hunter did not comply. Mr. Hunter declares that while he sat in his car in front of the Marlee Villa Apartments, he saw Leeds police arrive but did not see Officer Kirk or any other officer point a weapon at him, nor hear Officer Kirk or any other officer direct him to exit his vehicle. He believed the officers had arrived to arrest another man for shooting at him. He pulled away from the curb to drive home.

---

[2] These facts are the facts taken in the light most favorable to the Plaintiff for purposes of summary judgment. They may not be the real facts or the facts proved at trial.

The officers involved contend that they then engaged in a car chase with Mr. Hunter that ended at his home, during which he sped, drove erratically and in the opposing lane of traffic, and ran a red light and a stop sign. Mr. Hunter declares that on his drive home, he never noticed a police car following him; did not hear sirens or see police lights; did not run stop signs or stop lights or drive in the opposing lane of traffic; did not speed; and, as was his custom, blew his horn as he passed a neighbor sitting on her porch and received a wave in return. Officer Kirk maintains that at one point during the car chase, Mr. Hunter stopped the car and, with his right hand, pointed a gun through his back window toward Officer Kirk.

Mr. Hunter declares that he saw the officers' vehicles in his rearview mirror as he pulled into his driveway. The parties agree that Officer Kirk shot Mr. Hunter while Mr. Hunter was still seated in his car, on the passenger side, with the passenger door open.

According to Defendants' evidence, upon arrival at Mr. Hunter's home, the officers exited their vehicles. Officer Kirk again directed Mr. Hunter to show him his hands and Mr. Hunter again did not comply. As Officer Kirk continued to give him orders, Mr. Hunter did not comply, and began moving from the driver's side of his vehicle to the passenger side. Mr. Hunter opened the passenger side door and turned to face Officer Kirk. Officer Kirk, observing that Mr. Hunter held a black handgun, directed him to drop his weapon, but instead Mr. Hunter pointed it directly at Officer Kirk. Officer Kirk fired approximately three rounds at Mr. Hunter. After Mr. Hunter leaned back into the vehicle for a moment, he again leaned out of it and pointed his gun in the direction of Officer Kirk, and Officer Kirk fired two to three more rounds at Mr. Hunter.

Mr. Hunter, conversely, declares that his driver's side door was jammed, so he moved to the passenger side of his car; as he opened the passenger door, he was shot in the stomach. He

states that once he opened the passenger door, he heard someone direct him to throw out his gun, and so he dropped it through the opening of the door. As he opened the door, an officer opened fire on him, hitting him in the stomach. When he opened the door wider to get out of his vehicle, he heard shots from several directions and was shot multiple times. He maintains that "[a]t no time during the drive to my home or after I arrived home did I point my gun or make it visible to anyone, including the officers." (Doc. 29 at 4).

The police report states that "[t]he victim [Officer Kirk] reported over the radio that he saw a handgun in the suspect's right hand. . . . The suspect came out of the car on the passenger side and pointed his gun at the victim." (Doc. 9 at 12). A warrant issued for Mr. Hunter's arrest on January 14, 2014, alleging that "Ronald Hunter did, with intent to commit the crime of murder . . .attempt to intentionally cause the death of another person, Robert Kirk, by pointing a pistol at peace officer Robert Kirk . . . ." (Doc. 11 at 2).

After being indicted for attempted murder "by pointing a pistol at Officer Kirk," Mr. Hunter pled guilty to menacing on January 25, 2016. (Doc. 11 at 4). In relevant part, the terms of Mr. Hunter's signed "Proposed Plea Agreement" provide: "Reduce Att Murder to Menacing 13A-6-23. 6 Mos to serve." (Doc. 12 at 24). Similarly, the plea signed by the Jefferson County Circuit Court judge shows that Mr. Hunter pled guilty to "Att Murder reduced to Menacing." (Doc. 12 at 25). At his plea hearing, Mr. Hunter stated that he pled guilty to the charge of attempted murder "reduced to menacing." (Doc. 23-6 at 16).

## III.   Discussion

Mr. Hunter claims violations of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution; of the Alabama state constitution; and unspecified state and federal statutes.

He brings his federal constitutional claims pursuant to 42 U.S.C. § 1983 and invokes

supplemental jurisdiction for his state law claims.

 The court notes that which of Mr. Hunter's claims are brought pursuant to § 1983 and

which are brought under Alabama law is unclear. Mr. Hunter definitively asserts under § 1983

that the individual Defendants used excessive force in shooting him; that the individual

Defendants failed to intervene to prevent Officer Kirk from shooting him; and that the City and

Police Chief Jackson denied him due process by concealing their behavior, tampering with

evidence, and interfering with justice. He clearly asserts state law claims for assault and battery

(based on the shooting) against the individual Defendants and the tort of outrage (based on the

shooting and the allegations of evidence tampering) against the individual officer Defendants

(not Police Chief Jackson).

 The legal bases for his other claims are not so clear. He claims negligent supervision and

inadequate training against the City of Leeds and Police Chief Jackson, and out of an abundance

of caution the court assumes those are brought under both state law and § 1983. Mr. Hunter

additionally asserts that the City and Police Chief Jackson engaged in a pattern or practice of

deliberate indifference that caused the denial of Mr. Hunter's civil rights under state and federal

law. Finally, Mr. Hunter alleges that all Defendants engaged in a civil conspiracy to tamper with

evidence, which the court also presumes is asserted under state law and § 1983.

 Defendants argue that Mr. Hunter's claims are all premised upon the allegation that

Officer Kirk used unreasonable force in shooting him on December 16, 2013, and assert the

defenses of federal qualified immunity and immunity under Alabama law. They argue that Mr.

Hunter's municipal liability claims fail because no officer violated Mr. Hunter's clearly

7

established rights. Further, they contend that Mr. Hunter's § 1983 claims are barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994), and that he is judicially and collaterally estopped from bringing his claims, because of his guilty plea to menacing.

In response, Mr. Hunter renews his Rule 56(d) motion for discovery and argues that disputes of material fact as to the circumstances surrounding the shooting remain. He contends that the officers are not entitled to immunity, without addressing the issues of the *Heck* bar and judicial and collateral estoppel.

### A.    Whether a Dispute of Fact Exists as to the Use of Unreasonable Force

Because Defendants assert that Mr. Hunter's claims are entirely premised on the allegation that the officers' use of force in shooting him was unreasonable, the court begins with that question. The thrust of Defendants' argument is that Mr. Hunter cannot now claim that he never pointed his weapon at Officer Kirk because of his guilty plea and that this issue is dispositive as to all his claims.

Although Mr. Hunter was charged with attempted murder, he pled guilty to menacing. Under Alabama law, "[a] person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury." ALA. CODE § 13A-6-23(a). The warrant for Mr. Hunter and the indictment for attempted murder allege that Mr. Hunter pointed a pistol at Officer Kirk. Mr. Hunter's plea agreement documents and plea hearing establish that his attempted murder charge was reduced to menacing, to which he pled guilty.

Mr. Hunter asserts that "he never pointed the weapon at anyone nor did he fire it." (Doc. 1 at 4); *see* Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 42 at 2)

8

("Hunter himself testifies in his affidavit that not only did he not fire a weapon that day, and that he never pointed a weapon at officer Kirk . . . ."). He also declares that he was shot from multiple directions.

What he fails to allege in his Complaint, or show in response to the summary judgment motion, is what "physical action" he intentionally committed that placed or attempted to place "another person in fear of imminent serious physical injury." *See* ALA. CODE § 13A-6-23(a). To be guilty of menacing, Mr. Hunter unquestionably placed or attempted to place at least one of the officers in fear of imminent serious physical injury. However, without a plea colloquy or other record establishing the basis for his menacing conviction, the court cannot be sure that the basis for Mr. Hunter's conviction was his pointing a gun at Officer Kirk.

Thus, Mr. Hunter's declaration and his guilty plea create a genuine dispute of material fact as to what menacing act he committed and, accordingly, whether one or more officers' shooting him constituted excessive force.

### C.    Whether Plaintiff's § 1983 Claims Are Barred by *Heck v. Humphrey*

The Supreme Court established in *Heck v. Humphrey* that

> to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence

has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486–87.[3]

Defendants argue that Mr. Hunter's § 1983 claims are barred by the rule in *Heck*. In determining whether the success of Mr. Hunter's civil case would necessarily invalidate his criminal conviction, the court "analyze[s] the circumstances attendant to the conviction and carefully compare[s] them with the allegations in the § 1983 complaint and the remainder of the summary judgment record." *Ballard v. Burton*, 444 F.3d 391, 400 (5th Cir. 2006).

Under Eleventh Circuit law, "for *Heck* to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory." *Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007) (holding that *Heck* did not bar a plaintiff's § 1983 suit alleging excessive force during an arrest where the plaintiff had pled guilty to resisting arrest with violence). If "there is a version of the facts which would allow the conviction to stand[,] [t]hat is sufficient, under *Heck*, to allow the § 1983 suit to proceed." *Id.* at 883.

In *Dyer*, the plaintiff pled guilty to resisting arrest with violence. Here, Mr. Hunter pled guilty to menacing. *Both* admitted *some* degree of resistance to officers. But Dyer's excessive force claim did not "*necessarily* imply the invalidity of her conviction for resisting arrest with violence," because, without a factual record establishing precisely what actions she took to resist

---

[3] "*Heck*'s holding has been extended to claims seeking declaratory or injunctive relief as well as money damages." *Cano-Diaz v. City of Leeds*, 882 F. Supp. 2d 1280 (N.D. Ala. 2012) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Abella v. Rubino*, 63 F.3d 1063, 1066 (11th Cir. 1995)).

arrest with violence,

> to say that Dyer's claim is *Heck*-barred we would then have to say, to a logical certainty, that every act of violence—every kick, punch, etc.—by Dyer during the entire episode is charged in the information. Furthermore, we would have to say that every one of those violent acts was an act of self-defense in response to the officers' use of excessive force and therefore would have been justified. To read the information that way, when it plainly says no such thing, would be going many steps too far.

*Dyer*, 488 F.3d at 879, 882.

Here, to read Mr. Hunter's menacing plea as admitting that he necessarily pointed his gun an Officer Kirk goes many steps too far. The court cannot say that Mr. Hunter's guilty plea demonstrates that he pointed a gun at Officer Kirk when Mr. Hunter's plea documents and plea hearing testimony establish no such thing. *See also Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003) (holding that Heck did not bar a § 1983 suit where the facts underlying the plaintiff's burglary and receipt of stolen property convictions were "unknown from the record").

The Eleventh Circuit cited approvingly the Seventh Circuit's holding that a plaintiff will be *Heck*-barred "if his § 1983 complaint makes specific factual allegations that are inconsistent with the facts upon which his criminal convictions were based." *Dyer*, 488 F.3d at 883 n.9 (citing *McCann v. Nielson*, 466 F.3d 916 at 621). Describing this holding as a "gloss" on the *Heck* analysis, the Seventh Circuit affirmed the district court's approach "that even if [the plaintiff's] constitutional claim was not *Heck*-barred in the abstract, [the plaintiff] had voluntarily steered the action into *Heck* territory by making specific factual allegations in the complaint that were inconsistent with the facts upon which his criminal convictions were based." *Id.* "The question," then, "is not whether [the plaintiff] *could have* drafted a complaint that steers clear of *Heck* (he

could have), but whether he did." *McCann*, 466 F.3d at 622 (reversing and remanding because the plaintiff's complaint was ambiguously pled and the district court had construed the relevant paragraph as favoring the defendant).

Mr. Hunter has not pled specific facts inconsistent with his criminal conviction because he has pled *no* facts at all explaining how he took physical action that intentionally placed or attempted to place at least one of the officers in fear of imminent serious physical injury. *See* ALA. CODE § 13A-6-23(a). Further, the court cannot determine whether his version of events is inconsistent with his menacing conviction, because the court does not know what actions Mr. Hunter admits taking. Depending on his menacing conduct, the success of Mr. Hunter's § 1983 suit may not logically contradict his criminal conviction. On this record, the court cannot find that Mr. Hunter's § 1983 claims are *Heck*-barred.[4][5]

## C.    Collateral Estoppel

Defendants contend that Mr. Hunter is collaterally estopped from bringing his claims

_____

[4] Additionally, the court notes that in their Motion and Memorandum, Defendants argue that Mr. Hunter's § 1983 claims are precluded under *Heck* because "establishing that Officer Kirk's use of force was unreasonable would necessarily require a collateral attack on the basis of Plaintiff's menacing conviction." (Doc. 9 at 2–3). They do not separately make the point that a finding of evidence tampering so as to conceal officers' unlawful actions would necessarily invalidate Mr. Hunter's criminal conviction; instead, they argue, as the court has already noted, that all of Mr. Hunter's claims are premised on the assertion that the officers' use of force was unreasonable. The court observes that a finding that the officers engaged in evidence tampering could coexist with Mr. Hunter's having acted in some menacing way, even if the officers' use of force was not excessive.

[5] The Eleventh Circuit has observed that an open question exists as to "whether *Heck* bars § 1983 suits by plaintiffs who are not in custody and thus for whom habeas relief is not available." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005). Since that decision, the Eleventh Circuit has sent "mixed signals" and has not definitively resolved the question. *See Domotor v. Wennet*, 630 F. Supp. 2d 1368, 1377 (S.D. Fla. 2009) (reviewing Eleventh Circuit case law).

because they depend on his asserting that he never pointed his gun at Officer Kirk, which was finally determined by his guilty plea. "Collateral estoppel bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had 'a full and fair opportunity to litigate that issue in an earlier case.'" *Blohm v. C.I.R.*, 994 F.2d 1542, 1553 (11th Cir. 1993) (quoting *Allen v. McCurry*, 449 U.S. 90, 94–95 (1980)). "For collateral estoppel to be invoked 1) the issue must be identical in the pending case to that decided in the prior proceeding; 2) the issue must necessarily have been decided in the prior proceeding; 3) the party to be estopped must have been a party or have been adequately represented by a party in the first proceeding; and 4) the precluded issue must actually have been litigated in the first proceeding." *Id.* (citing *In re Raiford*, 695 F.2d 521, 523 (11th Cir. 1983)).

  The court cannot find that Mr. Hunter is collaterally estopped from asserting that he did not point his gun at Officer Kirk on December 16, 2013, because the record does not reveal that issue was necessarily decided during his criminal proceeding. In contrast, all Mr. Hunter admitted when he pled guilty was that he, by physical action, intentionally placed or attempted to place another person in fear of imminent serious physical injury. *See* ALA. CODE § 13A-6-23(a). Further, even if Mr. Hunter was collaterally estopped from arguing that he never acted menacingly, that would not prevent him from claiming that Defendants concealed evidence of unlawful conduct.[6]

---

[6] Defendants additionally assert the defense of judicial estoppel, which "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 MOORE'S FEDERAL PRACTICE § 134.30, pp. 134-62 (3d ed. 2000). Because the record does not show that Mr. Hunter claimed that he aimed his gun at Officer Kirk in pleading guilty to menacing, he is not judicially estopped from claiming otherwise in this suit.

D.      **Immunity from Suit**

The individual Defendants argue that they are entitled to qualified immunity from Mr. Hunter's § 1983 claims. They additionally assert state immunity from his state law claims.

1.      **Qualified Immunity for § 1983 Claims—Individual Officers**

Qualified immunity protects government officials performing discretionary, job-related functions from litigation unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Qualified immunity is designed to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).

Whether an official is entitled to qualified immunity "is a question of law to be decided by the court." *Willingham v. Loughnan*, 261 F.3d 1178, 1184 (11th Cir. 2001). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). If the officer establishes that he has acting within his discretionary authority, the burden then shifts to the plaintiff to demonstrate that the officer is not entitled to qualified immunity. *Lee*, 284 F.3d at 1194.

A two-prong test determines whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the *Saucier* analysis may be performed in any order). First, the court considers whether the facts, taken in the light most favorable to the plaintiff, show that the officer's conduct violated the

plaintiff's constitutional rights. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Second, the court asks whether the plaintiff's rights were clearly established under the law. *Gonzalez*, 325 F.3d at 1234.

Mr. Hunter does not dispute the individual officers' showing that they were, as on-duty police officers responding to a 911 call and pursuing a suspect, acting within their discretionary authority. Therefore, Mr. Hunter bears the burden to show that the officers violated his clearly established constitutional right to be free from excessive force. The Defendants argue that Mr. Hunter aimed his pistol directly at Officer Kirk; had he admitted doing so, he likely could not show that the officer(s) acted unreasonably in shooting him. *See Dukes v. Miami-Dade Cnty.*, 232 F. App'x 907, 912 (11th Cir. 2007) (quoting *Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005) ("Deadly force is reasonable for the purposes of the Fourth Amendment when an officer (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force; if feasible."); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003) ("Because the Constitution permits the use of deadly force to prevent a violent suspect from escaping, the Constitution must also permit the use of force against a suspect who poses . . . an imminent threat of danger to a police officer or others.").

However, whether Mr. Hunter posed an imminent threat of danger to the officers at the time he was shot remains an open question. Mr. Hunter alleges in his Complaint that the officers "fired countless shots at him" without provocation. (Doc. 1 at 5 ¶ 16). He contends in his

declaration that he drove carefully to his home; never pointed his gun at anyone; and was shot from multiple directions; taking his statements as true, the officers violated his constitutional rights by using excessive force in shooting him without provocation. *See Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) (quoting *Lee*, 284 F.3d 1197) ("Officers may use force that is 'necessary in the situation at hand.'").

Thus, the individual Defendants are not, on this record, entitled to qualified immunity on Mr. Hunter's § 1983 claims related to the shooting. They are additionally not protected by qualified immunity to the extent Mr. Hunter alleges evidence tampering, as they have failed to show that such actions fell within the scope of the officers' discretionary authority.

### 2.      State Law Immunity

The individual Defendants claim that they are additionally immune from suit under state law. Alabama law provides immunity from tort liability for peace officers "whose duties . . . include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state" when tort claims are based on their "conduct in performance of any discretionary function within the line and scope of [their] law enforcement duties." ALA. CODE § 6-5-338(a); *see also* ALA. CODE § 13A-3-27(b) (providing that officers are justified in using physical force in certain situations).

But Alabama law holds that "a police officer loses this immunity when he 'acts willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law.'" *Morton v. Kirkwood*, 707 F.3d 1276, 1285 (11th Cir. 2013) (quoting *Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000). Because the record does not establish that Mr. Hunter pointed his gun at Officer Kirk or how he acted menacingly toward the officer(s), the

16

court cannot determine whether the individual Defendant(s) acted beyond their authority in shooting Mr. Hunter.

The individual Defendants additionally maintain that Officer Kirk is immune from claims related to his shooting Mr. Hunter based on Alabama's self-defense statute. Alabama Code § 13A-3-23 provides that a person may use physical force on another person to defend himself or others from that person if he reasonably believes the other person will imminently use unlawful physical force. Because the record does not disclose what menacing actions Mr. Hunter took to intentionally place the officers in fear of imminent serious physical injury, the court cannot decide, as a matter of law, that Officer Kirk acted in self-defense by shooting him.

### E.    Municipal Liability

Defendants correctly point out that unless Mr. Hunter shows that the individual officers violated his constitutional rights, the City of Leeds cannot be liable under § 1983. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). However, Mr. Hunter has created a disputed issue of fact as to whether the individual Defendants violated his constitutional rights, and so the City may still incur § 1983 liability on these facts, assuming that Mr. Hunter proves a policy or well-settled custom under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Under Alabama law, the City of Leeds may not be held liable for the intentional torts of its employees. *Creemens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000) (citing ALA. CODE § 11–47–190; *Gore v. City of Hoover*, 559 So.2d 163 (Ala. 1990)). However, Mr. Hunter has alleged claims of negligent supervision, inadequate training, a pattern and practice of deliberate indifference, and civil conspiracy against the City of Leeds. None of these claims seek to hold the City vicariously liable, and so the court finds that the City is not entitled to summary

judgment on any of Mr. Hunter's claims.

### F.    Claims Against Defendant John Shields

Mr. Hunter failed to respond to Defendants' showing that Officer John Shields "was not involved in any way with the pursuit or apprehension of Ronald Hunter." (Doc. 10-2). Mr. Hunter's Rule 56(d) affidavits do not address how discovery would enable him to rebut the Defendants' showing that Officer Shields was not present during Mr. Hunter's shooting. However, Mr. Hunter also alleges evidence tampering claims against Officer Shields, and Defendants have not shown that Mr. Hunter cannot assert those claims against Officer Shields.

Therefore, the court **GRANTS** summary judgment to Defendant Shields as to the claims of excessive force, assault and battery, and failure to intervene, but **DENIES** summary judgment as to the claims of civil conspiracy and tort of outrage.

### G.    Rule 56(d) Motion

Because the court enters summary judgment in Mr. Hunter's favor except as to the shooting-related claims against Defendant Shields, which Mr. Hunter does not address in his Rule 56(d) motion, the court **FINDS AS MOOT** the Rule 56(d) motion asserted in Plaintiff's response.

## IV.    Conclusion

The court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Hunter's excessive force, assault and battery, and failure to intervene claims against Defendant Alan Shields and **DENIES** it on all other grounds.[7] The court will enter a separate order consistent

---

[7] The court notes that Mr. Hunter's civil conspiracy claim fails as a matter of law under the intracorporate conspiracy doctrine, which holds that "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a

with this opinion.

     **DONE** this 31st day of March, 2017.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

---

conspiracy." *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2016). This doctrine applies to government entities. *See id.* However, Defendants did not assert this defense as a ground in their Motion for Summary Judgment.