FILED

2021 Aug-11  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **RONALD HUNTER, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.: 1:15-CV-2266-KOB** |
| | ) |
| **CITY OF LEEDS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION</u>

The moral of *The Hare and the Tortoise*[1], one of Aesop's timeless fables, is "slow and steady wins the race." The platitude is generally good advice, but this case—brought by Plaintiff Ronald Hunter in December 2015 based upon events from December 2013; stayed in this court from May 2017 to February 2020 while Defendants appealed to the Eleventh Circuit on the issue of qualified and state-law immunity; and, most recently, stalled for many months while Plaintiff drafted a unified complaint—has plodded along long enough.

This matter comes before the court on Defendants the City of Leeds and Officer Robert Kirk's "Motion to Dismiss Counts Three Through Six of Third Amended Complaint." (Doc. 110). In his Third Amended Complaint, Plaintiff Ronald Hunter brings six claims against Defendants the City of Leeds and Officer Robert Kirk: "Excessive Use of Force Violation of Fourth and Fourteenth Amendments under 42 U.S.C. § 1983" (Count I); "Assault and Battery" (Count II); "Negligent Supervision and Inadequate Training" (Count III); "Deliberate Indifference (*Monell*)" (Count IV); "Tort of Outrage" (Count V); and "Civil Conspiracy" (Count

---

[1]    *The Hare & The Tortoise,* THE LIBRARY FOR CONGRESS: THE AESOP FOR CHILDREN, http://read.gov/aesop/001.html.

VI). Defendants ask the court to dismiss the latter four counts, asserting each fails to state a claim upon which relief can be granted. Plaintiff responded (doc. 112), and Defendants replied (doc. 113). The motion is ripe for review.

For the reasons set forth below, the court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss (doc. 110). The court DISMISSES WITH PREJUDICE Plaintiff's "Negligent Supervision and Training" (Count III), "Deliberate Indifference (*Monell*)" (Count IV), and "Civil Conspiracy" (Count VI) claims. The court DISMISSES WITH PREJUDICE Plaintiff's "Tort of Outrage" (Count V) claim against the City of Leeds but DENIES Officer Kirk's motion to dismiss the "Tort of Outrage" claim brought against him. The court dismisses these claims with prejudice because of the many opportunities Plaintiff has had to properly plead his claims.

## I.    Procedural History

The Eleventh Circuit set out much of the history of this case in its January 2020 opinion, so the court does not repeat it here. *See Hunter v. Leeds*, 941 F.3d 1265 (11th Cir. 2019). In that opinion, the Eleventh Circuit affirmed this court's denial of qualified and state-law immunity as to Officer Kirk—the officer who shot Plaintiff Ronald Hunter—but reversed the court's denial of qualified and state-law immunity to Officers Jackson, Reaves, and Chalian on Hunter's claims related to the shooting. *Id.* at 1271. The Eleventh Circuit then found that, based "on the facts accepted at the summary judgment stage, [Officer] Kirk did not violate Hunter's Fourth Amendment rights when he fired his first three shots at Hunter." *Id.* at 1279. But, the Eleventh Circuit continued, "while the use of deadly force may initially be justified, the level of force that is reasonable may change during the course of a police encounter." *Id.* at 1280 (citations omitted). Thus, "a reasonable jury could find that Kirk's continued use of force was no longer

proportionate to the danger presented, and thus his second round of shots constituted excessive force in violation of the Fourth Amendment." *Id.* The Eleventh Circuit also found that Officer Kirk was not entitled to immunity on Hunter's state-law claims. *Id.* at 1284.

On February 20, 2020, the parties submitted a Joint Status Report to the court. (Doc. 71). In that Joint Status Report, the parties stated that the Eleventh Circuit opinion "materially narrow[ed] the issues for resolution on remand." The parties agreed that the remaining issues were "whether the second round of shots Officer Kirk fired at Hunter violated Hunter's Fourth Amendment rights and constituted assault and battery under Alabama state-law; and Plaintiff's state-law claims of negligent supervision and training, and *Monell* deliberate indifference claims against the City of Leeds." The parties also agreed that Hunter should file a unified amended complaint consistent with the analysis and conclusions in the Eleventh Circuit's opinion within sixty days. (*Id.*).

Over the following months, the court extended the deadline for Hunter to submit his amended complaint three times for various reasons, including the COVID-19 pandemic. (Docs. 76, 78, 83). On September 11, 2020, Hunter filed his First Amended Complaint. (Doc. 85). The First Amended Complaint was not the unified document anticipated by the parties' February 2020 status report or by the court; rather, it incorporated the entire initial complaint and added two new claims without leave of court. (*See id.*). On September 23, 2020, the court held a status conference, and instructed Hunter to present the court with a unified document with only the claims remaining after the Eleventh Circuit's ruling. (Doc. 88).

On September 30, 2020, Hunter submitted a Second Amended Complaint. (Doc. 91). Hunter's Second Amended Complaint again included a dismissed defendant as a party and also included Defendants who were granted qualified immunity by the Eleventh Circuit. The Second

3

Amended Complaint also contained the two new claims added without leave of court in the First Amended Complaint.

On October 6, 2020, the court held another status conference with the parties and instructed Hunter to file a motion to withdraw the added claims. The court instructed Hunter that he would need to file a motion for leave of court to add any new claims or rename defendants. (Doc. 94). On October 13, 2020, Hunter filed a motion to withdraw specific additional claims from the Second Amended Complaint and to substitute a proper party in interest. (Doc. 95). Defendants responded to that motion and also moved to dismiss the Second Amended Complaint under Rule 41(b). (Doc. 97). Hunter then filed a motion for leave to file yet another amended pleading, attaching a proposed Third Amended Complaint (doc. 99), as well as a reply brief (doc. 100) to Defendants' motion to dismiss under Rule 41(b). The court granted Hunter leave to file a Third Amended Complaint but denied Hunter leave to add new claims and to add Defendant John Shields to Hunter's civil conspiracy claim; denied as moot Defendants' motion to dismiss the Second Amended Complaint; and gave Hunter specific instructions on amending his complaint. (Doc. 102). On December 17, 2020, Hunter filed a Third Amended Complaint (doc. 104) that substantially complied with the court's order. On February 17, 2021, Defendants filed their motion to dismiss counts three through six of Hunter's Third Amended Complaint (doc. 110), which has been fully briefed and which the court now considers.

## II.   Legal Standard

Defendants move to dismiss Counts Three, Four, Five, and Six of Hunter's Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a defendant may challenge whether a plaintiff has "stated a claim upon which relief can be granted." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While plaintiffs are not required to provide "detailed factual allegations" in their pleadings, they are required to provide "more than the unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. To be plausible on its face, a claim must contain enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The Supreme Court has identified "two working principles" for district courts to use when considering motions to dismiss. First, when evaluating motions to dismiss, although the court must assume the veracity of the well-pleaded factual allegations, it does not have to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Second, when evaluating motions to dismiss, district courts are to draw upon their "judicial experience and common sense" to determine if the complaint states a plausible claim. *Iqbal*, 556 U.S. at 679. The court must be able to "infer more than the mere possibility of misconduct." *Id*. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## III.   Facts

Because in deciding a motion to dismiss, the court looks only to the face of the complaint, the court sets out the facts as Hunter presents them in the Third Amended Complaint. According to the Third Amended Complaint, on the afternoon of December 16, 2013, Hunter went to his daughter's apartment—which she shared with her husband at the time, Anthony

Roberson—on Frisco Avenue in the City of Leeds. When Hunter arrived, Anthony Roberson began to shoot at him, striking the driver's side and door of Hunter's yellow vehicle.

Hunter avers that a witness to the shooting called 911 and erroneously stated that the occupant of a yellow vehicle (i.e. Hunter) had fired shots. Hunter states that he did not draw his gun at Frisco Avenue and that after Anthony Roberson fired shots at him, he left the premises and drove home. Based upon the 911 calls, Leeds City police went to Frisco Avenue. According to Hunter, the officers did not investigate the situation at Frisco Avenue but instead left the scene and went to Hunter's home.

A.  Alleged Excessive Force and Assault and Battery on December 16, 2013

When Hunter arrived at his home, he pulled into his carport. But he could not exit the driver's side of his vehicle because of the damage from Roberson's bullets. Officer Robert Kirk, Officer Brian Chalian, Sergeant Ron Reaves, and Police Chief Byron Jackson all arrived at Hunter's home shortly after he did. According to Hunter, although Officer Kirk did not have a warrant and had not seen Hunter commit a crime, Officer Kirk immediately pulled his weapon and positioned himself behind a large tree about 30 feet away from Hunter. Then, without warning Hunter, Officer Kirk fired his first volley of shots, striking Hunter and knocking him backward in the seat of his car. Hunter states that Officer Kirk fired at him based upon "Officer Kirk's uncorroborated claim that Hunter pointed a pistol at him."[2] After Officer Kirk fired the first volley of shots, Hunter says that he dropped his pistol on the ground outside his vehicle. Officer Kirk then fired a second round, again striking Hunter. Hunter was pulled from his vehicle. Hunter required life-saving surgery because of his wounds and states that he will require

---

[2]     The court notes that the Eleventh Circuit stated that "collateral estoppel bars Hunter from asserting, contrary to his guilty plea [to menacing], that he never pointed his gun at Kirk, but does not bar him from contesting Kirk's statements regarding the number of times that Hunter allegedly pointed his gun." *Hunter v. Leeds*, 941 F.3d at 1274.

lifelong medical care.

> B. Negligent Supervision and Training, Policy/Custom/Practice Regarding Excessive Force, and Tort of Outrage

In the Third Amended Complaint, Hunter avers that the City of Leeds failed to properly monitor and supervise the officers who came to Frisco Avenue, failed to investigate the scene there, and instead "launch[ed] an ill informed and near fatal encounter with Plaintiff."

Hunter avers that the City of Leeds "adopted, implemented, and/or enforced policies, practices, and training [on deadly force] that did not comport with national standards or state and federal law" and/or failed to implement standards that did comport with such standards and law, and that these policies and/or the failure to implement standards were the moving force that resulted in Hunter's constitutional rights being violated. Hunter avers that the City of Leeds was deliberately indifferent to supervising and training its officers and that it adopted a policy condoning abuse by "failing to fire, discipline or otherwise mitigate Kirk's and possibly other officers' danger to the community." Hunter avers that Officer Kirk was not removed from contact with the community while he was being investigated.

Hunter avers that Officer Kirk had only received "sporadic and brief training since his hiring, consisting mainly of how to shoot" and that Kirk was not trained on even the City's "outdated and obsolete" policy and procedure for use of deadly force.

> C. Charge, Prosecution, and Conspiracy

In the Third Amended Complaint, Hunter asserts that, on January 13, 2014, the Jefferson County District Attorney charged and indicted Hunter for attempted murder and making terroristic threats, despite having "no evidence" to support the charges. Hunter further alleges that instead the district attorney had sufficient evidence to arrest and charge Officer Kirk with attempted murder but did not do so.

Hunter asserts that Officer Kirk, the City of Leeds, District Attorney Brandon Falls, and the Jefferson County District Attorney's Office tampered with evidence—including placing Hunter's gun back in his vehicle after Hunter had thrown it out—and conspired with each other to bring unsupported charges against Hunter and to cover up Officer Kirk's use of deadly force. On January 25, 2016, Hunter pled guilty to a reduced charge of menacing; Hunter describes this plea as a "best interest plea of guilty."

## IV.   Discussion

The court will consider in consecutive order Counts Three through Six of Hunter's Third Amended Complaint to determine whether any of those claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants assert that Hunter's Counts Three through Six are nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." (Doc. 110 at 2–3) (quoting *Iqbal*, 556 U.S. at 678).

### A.   Count Three: Negligent Supervision and Inadequate Training

In his Third Amended Complaint, Hunter alleges that the City of Leeds "failed to properly monitor and supervise [O]fficer Kirk and possibly other officers," resulting in the violation of Hunter's constitutional rights, and that the City of Leeds' policies, practices, and training "failed to comport with national standards or state and federal law," resulting in the violation of Hunter's constitutional rights. (Doc. 104 at 18–19). Defendants argue that Hunter does not state a plausible claim for negligent supervision and training under federal or state law. (Doc. 110 at 3). The court will first consider Hunter's claim as alleged under federal law and then as alleged under state law.

*1. Negligent Supervision and Inadequate Training Claim under Federal Law*

Hunter brings his failure to train and supervise claims under 42 U.S.C. § 1983, which provides relief for those deprived of their constitutional rights by those acting under color of state law. Municipalities cannot be held liable on a *respondeat superior* theory; they are liable under § 1983 only when the execution of a municipal policy or custom "inflicts the injury." *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 681, 694 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479–80 (11th Cir. 1991)). A custom is a settled practice that can be said to take "on the force of law." *Id.* (citing *Monell*, 436 U.S. at 690–91).

The Eleventh Circuit has held that failure to train or supervise claims can only be the basis for § 1983 liability in certain limited circumstances—i.e., when "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton*, 489 U.S. 378, 387 (1989)).

Put differently, a failure to train police officers must "amount[] to *deliberate indifference* to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. 378, 388 (1989) (emphasis added). "Unless a policymaker knows of a need to train an officer in a particular subject area, no liability can arise from failure to train." *Marsh v. Butler County*, 268 F. 3d 1014, 1037 (11th Cir. 2001).

Thus, a plaintiff alleging a failure to supervise or train claim against a municipality must

show (1) that the municipality had *notice* of the need to train or supervise in a particular area, (2) that the municipality was deliberately indifferent to that need, and (3) that the municipality's deliberate indifference led to the plaintiff's rights being violated. A plaintiff may show notice and deliberate indifference in one of two ways: (1) by showing "a widespread pattern of similar constitutional violations by untrained employees" or (2) that the need for training was "so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Mingo v. City of Mobile,* 592 Fed. App'x 793, 799 (11th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

The "so obvious" method of establishing deliberate indifference is also known as the "single incident" exception. In *Canton*, the Supreme Court gave a hypothetical example of when a municipality would have notice of the need to train without any widespread pattern of constitutional violations: if a municipality provided firearms to police officers to aid them in arresting fleeing felons, it would be aware of the need to train those officers on the use of deadly force. *Canton*, 489 U.S. at 390 n. 10. The "single incident" exception is narrow. In fact, the Eleventh Circuit, in a non-published opinion, has noted that has never "found an appropriate use for *Canton*'s narrow, rare, hypothetical exception to the pattern-of-constitutional-violations requirement." *Robinson v. Brassel*, No. 16-0376-WS-B, 2017 WL 243765, at *12 (11th Cir. June 5, 2017).

Defendants assert that Hunter has not averred facts in his Third Amended Complaint showing a pattern of improper training, an awareness of program deficiencies, or a deliberate decision not to correct the deficiencies. (Doc. 110 at 7). Hunter argues in response that Count Three sets out "clear cogent factual allegations" that Officer Kirk was not properly trained or supervised, that the City of Leeds had a policy of failing to train its officers "on their legal duty

to refrain from the use of excessive force," and that the City of Leeds "reinforced that policy . . . by never disciplining Kirk" for shooting Hunter. (Doc. 112  at 5–6). Hunter asserts that "discovery is in progress and evidence exists in the custody[,] control[,] and possession of the City that will establish the history of widespread prior abuse by the City and its officers." (*Id.* at 6). He further argues that even if the negligent supervision and training are a "first occurrence," he still has a claim under § 1983.

The court agrees with Defendants that Hunter has failed to state a plausible claim for negligent training and inadequate supervision. He has failed to aver any facts showing a *pattern* of constitutional violations that would constitute a policy and has not averred facts convincing the court that the need for training on not improperly using excessive force was "so obvious" that it should fall under the "single incident" exception. Hunter asserts that discovery will give him what he needs to show a pattern of abuse, but the court refuses to "reserve ruling on the motion to dismiss in order to allow the plaintiff to look for what the plaintiff should have had—but did not—before coming through the courthouse doors"; instead, the court looks "only to the facts as alleged in the complaint." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007). But, *if* discovery does uncover evidence of a pattern, then Hunter may file a motion for leave to amend.

For these reasons, the court finds that Hunter's negligent supervision and inadequate training claim is not facially plausible under federal law.

### 2. Negligent Supervision and Training under State Law

Defendants also assert that Hunter has failed to state a claim for negligent supervision and training under Alabama state law because a claim for negligent supervision and training of a law enforcement officer is not cognizable by operation of Ala. Code §§ 11-47-190 and 6-5-

338(a)-(b). (Doc. 110 at 4).

Alabama Code § 11-47-190 protects municipalities from liability "unless [an] injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty." Alabama Code § 6-5-338(a) grants peace officers immunity from tort liability for any conduct relating to discretionary functions within their law enforcement duties. Such immunity extends to municipalities that appoint peace officers. Ala. Code § 6-5-338(b); *see also Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003) ("[I]f a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

The chief of police has the general supervision of the police force. Ala. Code § 11-43-55. So Chief Byron Jackson, the chief of police for the City of Leeds, was responsible for training and supervising the City of Leeds police officers. The immunity Chief Jackson enjoys as a peace officer for the discretionary function of supervising and training the City of Leeds police force extends to the City of Leeds by nature of § 6-5-338(b).

Under Alabama law, because Defendant the City of Leeds has raised the defense of state-agent immunity, the burden shifts to the plaintiff to show that Chief Jackson "acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority" so that the City of Leeds would be liable for his alleged failure to train or supervise. *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006). Hunter has alleged no facts in his Third Amended Complaint that Chief Jackson acted in such a way, and he has offered no response as to why his claim is viable under Alabama law. The court finds that Chief Jackson—and by extension the City of Leeds—enjoys immunity for Hunter's claim of negligent training and inadequate training to the extent Hunter

brings it under Alabama state law.

Even if the City did not have immunity extended to it under the Alabama Code, Defendants argue that the torts of negligent training and supervision "'require a plaintiff to show an employer knew or should have known its employee was incompetent.'" (Doc. 110 at 6) (quoting *Hawes v. Bailey*, No. 2:17-cv-1811-SGC, 2019 U.S. Dist. LEXIS 671, at *5 (N.D. Ala. Jan. 3, 2019)). Here, Hunter has averred no facts that Chief Jackson or the City of Leeds knew or should have known that Officer Kirk was incompetent.

For these reasons, the court finds that Hunter's negligent supervision and inadequate training claim is not facially plausible under Alabama law and must be dismissed.

Thus, the court DISMISSES WITH PREJUDICE Hunter's negligent supervision and inadequate training claim.

B.   Count Four: Deliberate Indifference (*Monell*)

In addition to his Negligent Training and Inadequate Supervision claim, Hunter also brings a separate Deliberate Indifference claim, asserting that the City of Leeds "adopted a policy condoning [deadly force abuses] by failing to fire, discipline or otherwise mitigate Kirk's and possibly other officers' danger to the community." (Doc. 104 at 21). Defendants assert that Hunter has not "allege[d] facts identifying any relevant municipal policy or custom, much less non-conclusory facts showing a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" (Doc. 110 at 8) (citing *Canton*, 489 U.S. at 385 and *Monell*, 436 U.S. at 690–94).

In response, Hunter asserts that he has "clearly set out the facts that the indiscriminate unprofessional and unwarranted use of deadly force in this case was a foreseeable and direct result of a municipal custom and or policy of failing to train its officers on the constitutional

limits on the use of deadly force, and failing to investigate and discipline its officers after the

illegal use of deadly force as is clearly illustrated by the City's inaction in the case at bar." (Doc.

112 at 8). Hunter further argues that the circumstances in the present case—the City's not

training its officers on the national standard for proper use of deadly force, not removing Officer

Kirk from the police force after he shot Hunter, and not bringing any criminal charges against

Hunter—constitute the "narrow range of circumstances" in which "a pattern of similar violations

might not be necessary to show deliberate indifference." (*Id.* at 10).

The court has explained the "deliberate indifference" standard in the section addressing

Hunter's Negligent Supervision and Inadequate Training claim. "A municipality's practice,

policy or custom is not some tangential factual matter in a section 1983 case; it is the core

element." *Perez v. Miami-Dade County*, 297 F.3d1255, 1266 (11th Cir. 2002). Here, as

explained more fully above, Hunter has not alleged facts showing a widespread pattern of similar

constitutional violations or that his claim should fall under the "single incident" exception.

For these reasons, the court DISMISSES WITH PREJUDICE Hunter's deliberate

indifference claim for failure to state a plausible claim.

C.  Count Five: Tort of Outrage

In his Third Amended Complaint, Hunter brings a tort of outrage claim under Alabama

state law, asserting that Officer Kirk was not properly trained on the use of deadly force; he

asserts that Officer Kirk's conduct was "outrageous" in that he shot Hunter seven times instead

of taking him into custody for questioning "because Hunter had no outstanding warrants and had

not endangered Kirk in any way." (Doc. 104 at 20). Defendants argue that Hunter's tort of

outrage claim lacks merit because it seeks to impose municipal liability on the City of Leeds,

based upon Officer Kirk's training and supervision. (Doc. 110 at 10). Defendants state that the

tort of outrage is an extremely limited cause of action that has never been expanded to the circumstances Hunter avers and that the tort of outrage is an intentional tort for which the City cannot be held liable under Ala. Code § 11-47-190. (Doc. 110 at 10).

In response, Hunter argues that the circumstances in this case are "undoubtably the kind of extreme circumstances an Alabama Court could and should recognize" and that even though it is a limited cause of action, "it is clearly appropriate and warranted based on [the] facts." (Doc. 112 at 14). Hunter asserts that Kirk's "firing his weapon ten (10) times in two separate volleys cannot be construed as anything less than reckless, malicious, etc. since there were no exigent circumstances or a danger to Kirk or others at the scene." (*Id.* at 15). Hunter further asserts that "[t]he Eleventh Circuit . . . analyzed the facts and found that the Tort of Outrage was appropriate against Kirk." (*Id.* at 16). Hunter lastly asserts that "[i]ntent is not an issue here." (*Id.* at 16−17).

In reply, Defendants state that Hunter's repeated assertion that Officer Kirk faced no exigent circumstances or danger is inconsistent with the law of this case, as Hunter plead guilty to pointing his gun at Officer Kirk. (Doc. 113 at 12−13).

First, the court notes that the Eleventh Circuit reasoned only that Officer Kirk was not entitled to discretionary function immunity on Hunter's state-law claims. (Doc. 68-1 at 32). The Eleventh Circuit did not address the merits of Hunter's tort of outrage claim; Hunter misleads the court by suggesting so. Second, the court notes that Defendants correctly state that Hunter continues to make claims that are not consistent with the law of this case, and the court warns Hunter against continuing to do so in the future.

Third, the court considers whether Hunter's tort of outrage claim is due to be dismissed. The Alabama Supreme Court has indeed called the tort of outrage an "extremely limited cause of action." *Potts v. Hayes*, 77 So. 2d 462, 465 (Ala. 2000). For a plaintiff to succeed with a tort of

outrage claim, the plaintiff must prove that the defendant's conduct "(1) was intentional and reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So. 2d 1041, 1043 (Ala. 1993). In *Potts*, the Alabama Supreme Court explained that the Court has recognized tort of outrage in only three scenarios: (1) "wrongful conduct in the family-burial context," (2) "barbaric methods employed to coerce an insurance settlement," and (3) "egregious sexual harassment." *Id.* In 2011, the Alabama Supreme Court clarified that the tort of outrage could be "viable" in circumstances other than those recognized in *Potts. Little v. Robinson*, 72 So. 3d 1168, 1173 (Ala. 2011). But the Court was clear that "the tort of outrage is viable only when the conduct is 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized society.'" *Id.* (quoting *Horne v. TGM Assocs., L.P.* 56 So. 3d 615, 631 (Ala. 2010)) (internal quotations omitted).

Hunter points to no cases in which the Alabama Supreme Court has recognized the tort of outrage in the context of excessive police force, and the court knows of none. But because the Alabama Supreme Court *could* recognize the tort of outrage in a case of extreme use of force, the court DENIES Defendant Kirk's motion to dismiss the tort of outrage claim at this time. The court recognizes that Hunter's allegations that Kirk fired a round of shots at him after he had dropped the gun outside his car and after Officer Kirk had already wounded Hunter—if proven— could be the kind of outrageous and extreme police brutality that could be viewed as "atrocious and utterly intolerable in civilized society."

But the tort of outrage is an intentional tort for which municipalities may not be held liable. *Walker v. City of Huntsville*, 62 So. 3d 474, 501 (Ala. 2010) (stating that under Ala. Code

§ 11-47-190 a city "may be liable only for acts of neglect, carelessness or unskillfulness"). Thus, the court finds that Hunter has failed to state a plausible claim against the City of Leeds and DISMISSES WITH PREJUDICE Hunter's tort of outrage claim against the City of Leeds.

      D.     <u>Count Six: Civil Conspiracy</u>

In his Third Amended Complaint, Hunter alleges that Officer Kirk, the City of Leeds, and the Jefferson County District Attorney's Office "conspired among themselves and possibly with others to bring the unsupported criminal charges of making a terroristic threat and attempted murder against Hunter"; he further asserts that Officer Kirk, the City of Leeds, and Jefferson County District Attorney Brandon Falls tampered with evidence and withheld evidence, which resulted in Officer Kirk not being properly investigated and prosecuted and with Hunter being overcharged. Hunter brings his civil conspiracy claim under Alabama state law and under § 1983.

Defendants argue that Hunter's civil conspiracy claim should be dismissed for four reasons: (1) Hunter's claim is barred by the statute of limitations; (2) Hunter's claim is implausible; (3) Hunter's claim is facially without merit; and (4) Hunter's claim is barred by the intracorporate conspiracy doctrine. The court finds that Hunter has failed to state a plausible civil conspiracy claim and that his claim is barred by *Heck v. Humphrey*, 512 U.S. 447 (1994). The court DISMISSES WITH PREJUDICE the civil conspiracy claim for those two reasons, but considers each of Defendants' other arguments.

Under Alabama state law, a civil conspiracy "is a combination of two or more persons to do: (a) something that is unlawful; [or] (b) something that is lawful by unlawful means." *Purcell Co. v. Spriggs Enters., Inc.*, 421 So. 2d 515, 522 (Ala. 1983). In a conspiracy action, "[t]he gist of the action is not the conspiracy but the underlying wrong that was allegedly committed."

*Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991) (citation omitted). "[I]f the underlying wrong provides no cause of action, then neither does the conspiracy." *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993).

A plaintiff states a "§ 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (quoting *GJR Invs., Inc. v. County of Excambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). A plaintiff alleging a § 1983 conspiracy claim "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted).

*1. Statute of Limitations*

Defendants assert that a conspiracy claim involving the District Attorney was not plead within the statute of limitations. In his initial complaint, filed in December 2015, Hunter alleged that Police Chief Jackson, Defendant officers, and City of Leeds supervisors "conspired to suppress the unwarranted and unlawful conduct of Defendant Officers by tampering with evidence and proffering the same to be used in a judicial tribunal . . . with the specific intent to cover up the violations of Plaintiff's civil rights." (Doc. 1 at 10). In its March 2017 memorandum opinion considering Defendants' motion for summary judgment (doc. 9), the court noted

> . . . Hunter's civil conspiracy claim fails as a matter of law under the intracorporate conspiracy doctrine, which holds that "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2016). This doctrine applies to government entities. *See id.* However, Defendants did not assert this defense as a ground in their motion for summary judgment.

(Doc. 44 at 18 n. 7).

The court denied Defendants' summary judgment motion on the civil conspiracy claim, as Defendants moved for summary judgment on Hunter's civil conspiracy claim on immunity

grounds only. (*Id.* at 18).

In his Third Amended Complaint, Hunter adds actors outside the City of Leeds: Hunter asserts that Officer Kirk, the City of Leeds, the District Attorney's Office, District Attorney Brandon Falls, and "possibly others" conspired to bring unsupported charges against Hunter to protect them from civil and criminal prosecution for their acts; conspired to tamper with evidence, resulting in a failure to prosecute Kirk for attempted murder; and conspired to tamper with evidence resulting in the exaggeration and overcharging of indictments against Hunter. (Doc. 104 at 23). Defendants assert that the civil conspiracy claim involving District Attorney Brandon Falls was not pled within the applicable statute of limitations. (Doc. 110 at 13).

Under Alabama state law, a civil conspiracy claim depends upon an underlying cause of action; if the underlying cause of action is barred by the statute of limitations, so is the conspiracy claim. *Freeman v. Holyfield*, 179 So. 3d 101, 105−106 (Ala. 2015). Defendants assert that Hunter's claim of evidence tampering "could only potentially fall within the scope of a cause of action with a two (2) year statute of limitations; such as potentially negligence, wantonness, or maybe malicious prosecution," all of which fall under Ala. Code § 6-2-38(l). (Doc. 110 at 13). Defendants assert that Hunter did not allege a conspiracy involving the District Attorney within the statute of limitations and that the allegations do not relate back "because they are based upon different conduct involving different actors." (*Id.*).

For a § 1983 action, the statute of limitations is "that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249−50 (1989)). In Alabama, the statute of limitations for personal injury torts is two years. Ala. Code § 6-2-38(l). "In Section 1983 cases, 'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to

a person with a reasonably prudent regard for his rights.'" *Mullinax v. McElhenney*, 817 F.2d 711, 716 (quoting *Calhoun v. Alabama Alcoholic Beverage Control Board*, 705 F.2d 422, 425 (11th Cir. 1983) (internal quotations omitted).

Hunter argues that "[t]he assertion that there is a statute of limitations bar to this claim is clearly not on point" because Hunter brought the claim for civil conspiracy in the initial complaint and was not required to bring the District Attorney as a party before the court. (Doc. 112 at 22).

For an amendment to relate back to the original pleading, "the law that provides the applicable statute of limitations [must] allow[] relation back" and the amendment must "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1). The court finds that the civil conspiracy claim Hunter brings in his Third Amended Complaint *probably* relates back, as it asserts a claim that arises out evidence tampering, an occurrence set out in Hunter's December 2015 complaint. Thus, the court declines to dismiss Hunter's civil conspiracy claim on this basis.

## 2. *Plausibility*

Defendants assert that "Plaintiff does not identify the underlying cause of action upon which his conspiracy claim is premised, facts which support a reasonable inference that the alleged co-conspirators reached an agreement or understanding to act in the ways alleged, or that there was in fact ever even any communication between anyone associated [with] the City of Leeds and District Attorney Brandon Falls." (Doc. 110 at 23).

First, the court will consider the issue of not identifying an underlying cause of action. Although Hunter does not bring a separate claim for negligence, wantonness, or malicious prosecution, he alleges that Defendants Kirk, the City of Leeds, the Jefferson County District

Attorney's Office, and possibly others tampered with evidence and then brought charges against him. The court finds that Hunter has identified an underlying wrong—evidence tampering—that supports his state-law civil conspiracy claim. Thus, the court does not dismiss his state-law civil conspiracy claim on this basis.

Next, the court will consider whether Hunter's claim is plausible. Defendants assert that Hunter has averred no facts that the alleged conspirators reached an agreement or even communicated with each other. (Doc. 110 at 11–12). When alleging a conspiracy, "[m]ore than mere conclusory notice pleading is required." *Fullman v. Graddick*, 739 F.2d 554, 556 (11th Cir. 1984). "It is not enough to simply aver in the complaint that a conspiracy existed." *Id.* at 557. "Conclusory allegations of agreement or conspiracy are insufficient." *Quality Auto Painting Ctr. of Roselle v. State Farm Indem. Co.*, 917 F.3d 1249, 1262 (11th Cir. 2019). "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Gaddick*, 739 F.2d 553, 556 (11th Cir. 1984). "The linchpin for conspiracy is agreement, which presupposes communication." *Fulwood v. Fed. Bureau of* Prisons, 568 Fed. App'x 753, 756 (11th Cir. 2014) (citing *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992)).

Defendants assert that Hunter has not plead "facts which support a reasonable inference that the alleged co-conspirators reached an agreement or understanding to act in the ways alleged, or that there was in fact ever even any communication between anyone associated [with] the City of Leeds and District Attorney Brandon Falls." (Doc. 110 at 12). In response, Hunter states that he "has alleged and established a prima facie case of conspiracy under 42 U.S.C. § 1983" and that "[t]he District attorney and the City of Leeds used [the] time [between when Hunter was shot and when Hunter was charged] to conspire together and institute the plan to

arrest, incarcerate, intimidate, discredit and coerce Hunter into abandoning his rights to pursue legal action against the City and Kirk for the violation of his civil rights which he had just begun to look into." (Doc. 112 at 18–19).

The court agrees with Defendants that Hunter has not stated a plausible claim for civil conspiracy. Hunter has not alleged facts that the alleged co-conspirators communicated with each other, came to any kind of agreement that resulted in a denial of his rights, or took concerted action that resulted in a denial of his rights. In other words, he has not stated a plausible claim for relief. For this reason, the court DISMISSES WITH PREJUDICE Hunter's civil conspiracy claim for failure to state a plausible claim.

3. *Facial Merit*

Defendants also assert that Hunter's conspiracy claim is facially meritless. Defendants argue that no legally cognizable cause of action exists as to Hunter's claim that District Attorney Brandon Falls's decision not to prosecute Officer Kirk injured him and that Hunter's claim of evidence tampering is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 110 at 14). Hunter does not respond to the first argument, and the court agrees with Defendants that Hunter has not identified a legally cognizable cause of action as to an alleged conspiracy that resulted in Officer Kirk not being prosecuted.

As to Hunter's allegation that evidence tampering led to his being "improperly arrested and charged," Defendants argue that "the *Heck* and collateral estoppel issues applicable to the Hunter's newly amended conspiracy claim are distinct from those raised in response to Hunter's original complaint alleging that he never pointed his pistol at anyone, and subsequently addressed by the Eleventh Circuit Court of Appeals." (Doc. 110 at 14). In response, Hunter states that the City of Leeds, Officer Kirk, the District Attorney, and others participated in a conspiracy

22

to charge him with multiple felonies without evidence and that he only "entered a best interest plea to the reduced charge of menacing." (Doc. 112 at 17).

But "Alabama law does not provide for the entry of a nolo contendere plea (also known as a 'no contest' plea)." *Wallace v. State*, 959 So. 2d 1161, 1164 (Ala. Ct. App. 2006). And on appeal, the Eleventh Circuit found that "collateral estoppel bars Hunter from asserting, contrary to his guilty plea [for menacing], that he never pointed his gun at Kirk, but does not bar him from contesting Kirk's statements regarding the number of times that Hunter allegedly pointed his gun." *Hunter v. Leeds*, 941 F.3d 1265, 1274 (11th Cir. 2019). The Eleventh Circuit found that "both the warrant and the initial indictment charged Hunter solely with 'pointing a pistol at Peace Officer Kirk,' and no other action," that Hunter "admitted to pointing his pistol at Kirk," and that Hunter is "estopped from now claiming that he did not do so." *Id.* at 1275−76. The Eleventh Circuit reasoned that "[b]ecause it is logically possible that Hunter pointed his gun at Kirk, and that Kirk nonetheless used excessive force in response, the *Heck* bar does not apply" to Hunter's excessive force claim. *Id.* at 1276 n. 12. Now Defendants posit that the *Heck* bar *does* apply to Hunter's civil conspiracy claim.

"[F]or *Heck* to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory." *Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007). Defendants assert that Hunter's claim alleging that Officer Kirk, the City of Leeds, and the District Attorney conspired to "tamper with evidence and improperly withhold evidence that resulted in the exaggeration of and overcharging of indictments against Ronald Hunter, which improperly caused him to be arrested and charged" (doc. 104 at 23−24) "goes to the very heart of the validity of Hunter's confinement and conviction, and cannot be parsed and bifurcated between allegations that would impugn the conviction, and those that would not." (Doc. 110 at

15).

Defendants point the court to *Baker v. City of Hollywood*, 391 Fed. App'x 819 (11th Cir. 2010). In that unpublished case, the Eleventh Circuit affirmed the district court's conclusion that the plaintiff's civil conspiracy claim was barred by *Heck* and stated that "[a]lthough [the plaintiff] was acquitted on certain charges, success on his conspiracy claim necessarily would impugn the validity of his conviction for battery on a law enforcement officer because his claims allege that defendants' unconstitutional acts caused him to be convicted of that charge." *Id.* The Eleventh Circuit stated:

> To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by acts the unlawfulness of which would render a conviction invalid, a section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, invalidated by a state tribunal, or called into question by a federal court's issuance of writ of habeas corpus; otherwise, such a claim is not cognizable under section 1983.

*Baker*, 391 Fed. App'x at 821 (internal citations omitted).

In his Third Amended Complaint, Hunter alleges that Officer Kirk, the City of Leeds, Jefferson County District Attorney Brandon Falls, and others conspired to bring "unsupported charges of making a terroristic threat and attempted murder," to "tamper with evidence and[/] or improperly withhold evidence that resulted in the exaggeration of and overcharging of indictments" against Hunter and that Hunter "suffered unwarranted arrest and incarceration" due to the conspiracies. (Doc. 104 at 24).

The court agrees with Defendants that if Hunter were to succeed with his civil conspiracy claim, it would impugn the validity of his conviction for menacing. Defendants previously raised the *Heck* issue in a laundry list of reasons that the court should not allow Plaintiff to include his civil conspiracy claim in his Third Amended Complaint. (Docs. 97, 101). Now that Defendants have more fully briefed the issue, Defendants have convinced the court that

Hunter's success on his civil conspiracy claim would invalidate his conviction for menacing. If Hunter were to successfully show that Defendants brought unsupported charges, tampered with evidence, or improperly withheld evidence, Hunter's conviction for menacing would not stand. Hunter's menacing charge has not been invalidated; thus he may not bring his civil conspiracy claim under § 1983. Thus, the court DISMISSES WITH PREJUDICE Hunter's civil conspiracy claim because it is barred by *Heck*.

    4.  *Intracorporate Conspiracy Doctrine*

Defendants lastly assert that "Plaintiff's conclusory allegation including the District Attorney in the conspiracy count does not take his claim beyond the operation of the intracorporate conspiracy doctrine." (Doc. 110 at 17). As described above, the intracorporate conspiracy doctrine holds that "acts of corporate agents are attributed to corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy" and applies to government entities. *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2016).

Defendants argue that "[a]s the Leeds officers have been determined to have been in privity with, and acting for, the State, the officers and the District Attorney were serving the same master and the intracorporate conspiracy doctrine should apply to preclude this Count." (Doc. 110 at 18). Defendants point the court to the Eleventh Circuit's discussion of whether Hunter was collaterally estopped from claiming that he did not point his pistol at Officer Kirk and its finding that the officers and the prosecutor satisfied the "same parties" requirement because they were all acting for the State. *Hunter v. Leeds*, 941 F.3d 1265, 1275 (11th Cir. 2019).

The court is not convinced that the intracorporate conspiracy doctrine—which is based upon agency principles—should be extended to these circumstances. The officers are agents of

25

the City of Leeds; the District Attorney is an agent of the state of Alabama. Because it is

dismissing Hunter's civil conspiracy claim on other grounds, the court does not need to reach

this ground.

## V.  Conclusion

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART**

Defendants' motion to dismiss (doc. 110). The court **DISMISSES WITH PREJUDICE**

Plaintiff's "Negligent Supervision and Training" (Count III) claim against the City of Leeds,

"Deliberate Indifference (*Monell*)" (Count IV) claim against the City of Leeds, and "Civil

Conspiracy" (Count VI) claim against both the City of Leeds and Officer Kirk. The court

**DISMISSES WITH PREJUDICE** Plaintiff's "Tort of Outrage" (Count V) claim against the

City of Leeds but **DENIES** Officer Kirk's motion to dismiss the "Tort of Outrage" claim brought

against him at this time. The court dismisses Plaintiff's claims with prejudice because of the

many opportunities Plaintiff has had to properly plead his claims.

**DONE** and **ORDERED** this 11th day of August, 2021.

_____

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE